The case is Wal-Mart Associates v. Industrial Commission, 5110276. Counsel, please. Can I please report, Counsel? My name is Damon Young, and I represent the appellant, Wal-Mart. As we know, the injured employee bears the burden of proof of all elements of his or her workers' compensation claim. It is our contention the appellee failed to prove causation in an accident, and as such, the Commission's award of prospective medical benefits was inappropriate and should be reversed. The employee in this case is alleging that on September 29, 2009, she fell at work and injuring her bilateral lower extremities. Is that in dispute, that she fell at work? Did she fall at work? No, Your Honor, it's not in dispute. There was a factual issue, if she reported it right away, at which the appellee's brief stated, and she did, in testimony state that she... And there was some work done, and she slipped on something that... Yeah, there was some grease or some oil on the floor, exactly. We contend that medical opinion is not an essential element to support the conclusions of the Industrial Commission in an accident claim like this. But what we are arguing is that they have, for just the testimony of the petitioner without corresponding medical opinion, that the petitioner must prove that a chain of events which demonstrates a previous condition of good health, then an accident, then subsequent injury resulting from there, is what would limit that rule stating that you don't need medical opinion. Where also the claimant's version of the accident must be uncontradicted and her testimony unimpeached, and the recital of the facts surrounding the accident may be sufficient to sustain... Is that a rule you're citing, it has to be unimpeached? I'm sorry? Is that a rule of law you're citing, that the claimant could not collect unless her testimony was unimpeached? Isn't that up to the Commission? Right. What I'm quoting from is the International Harvester case that states that the medical opinion is not necessary, but you also have to look at the case to make sure, or to prove that, like I said before, that it was good health and an accident, then injuries, and then also that the version of the facts must not be uncontradicted or the petitioner must not be impeached to prove a causal connection, is what I'm arguing. And in this case, the petitioner had prior medical treatment, which she denied on cross-examination, but later changed her story with the evidence in the file that showed in June of 2008 she had prior right knee treatment. Three weeks prior to the alleged accident, the petitioner also had lower extremity treatment that showed edema bilaterally. But that didn't have anything to do with the knee, did it? The edema bilaterally? Well, if you look at Dr. Roblin's opinion in January 2010, she states that the petitioner's right knee was not due to the venous insufficiency. So yes, I would contend that the medical records in early September 2009 shows that the petitioner was treating for bilateral lower extremity complaints, and it's not clear if it was for the knee or not, and I would think that would take a medical opinion to clear that issue up. Because the only opinion is Dr. Roblin that states that her venous insufficiency, which she alleges is why she was at that visit, was the reason for her complaints before the work accident. After the work accident of September 29, 2009, the petitioner follows up with her medical provider and states that she had no edema or any problems in her lower extremity. This is the only medical record in the case that shows that she had a clear lower extremity exam, which happened to be three days after the accident. And when she testified at trial, she said that she had immediate onset of swelling and pain in both her knees, which was September 29. The first medical record after the accident, three days later, it shows that this is inconsistent with her testimony. She also has five different accident histories, or lack thereof, when she does report to the medical facility. October 1st, she doesn't report an accident at all, which is three days after the accident. On October 4th, she does state that she fell and injured both her left and right knee. On October 6th, 2009, she states that she injured her left knee but was not sure what happened to her right knee. And on October 12th, 2009, she states that she did the splits and twisted her right knee. And then when she testified at trial how the accident happened, she stated that she fell at work and tried to catch herself with her right knee. Well, why is that all inconsistent? You did the splits, I tried to catch myself. You've already conceded there was, she fell, it was an accident, nobody's disputing that. Right, well, what she stated was that she slipped and fell directly onto the left knee. When you're doing the splits, you're not landing on the knee specifically. And then also, what I think is important out of those histories, though, is she also states, one, she gives two medical visits, one with Dr. Roble, where she doesn't even give a work accident history. And also, she states on two occasions, October 4th and October 9th, that she doesn't know exactly what happened to her right knee at all. Let me pull it out a little bit. She testified to experience a little bit of pain following the fall, a little bit of swelling. And that the, she, it's documented, as you said, on October 4th, she specifically told the medical personnel her symptoms came on gradually and became progressively worse. When she goes to see the first doctor, I mean, you know, she doesn't believe the accident is that serious, and so she doesn't, she's there for a different purpose, admittedly, right? It doesn't get anywhere with them. Yet a few days later, she specifically said, yeah. The October 1st visit you're referring to? The October 4th visit. She told them, did she not, that she had problems. No, that was actually in the medical record itself. It says lower extremities were normal on that visit. That's the only visit she had within the medical record that showed a normal visit. So October 4th, she went to Crossroads. She did not tell medical personnel that her symptoms came on gradually and became progressively worse. I'm sorry, you're not. The October 4th visit, she did. Right, that's what I'm saying. The October 1st visit I was referring to. But when I cross-examined her, I asked her specifically, did you have the onset of pain and swelling at time of accident? And she testified, yes, I had pain and swelling at time of accident. That continued all the way through to the date of arbitration. And when she went to the October 1st visit, actually she made no work history. She didn't state a work accident history. She had a clean bill of health for the lower extremities on the medical record. Where did she see him October 1st? She was at the Crossroads Medical Facility on October 1st. She maintained all of her treatment at Crossroads Medical Facility throughout this whole time. They have a hospital that she went to and also a facility, a medical facility. So what was the purpose of the visit on October 1st? It was something other than any lower extremity pains or anything. But they did an examination, and the examination results are in that medical record. It's also important to note that the petitioner's MRI on October 12, 2009, demonstrated only degenerative changes. There were no ligament tears or no problems with just an arthritic knee. It would be consistent with her June 08 medical visit, and it's also consistent with her September 9, 2009 medical visit for lower extremity problems. And she also stated that she's had bilateral knee pain for two to three years prior to arbitration, which is consistent with the medical record. And so based on the record, it's obvious that because of her ongoing medical treatment before the accident and then after the accident was inconsistent with her history and how the accident itself happened, that she did not present at time of accident with a good bill of health. Then it doesn't show subsequent to the accident a disability, because she appeared on October 1st without any problems. And then also that her testimony was not consistent with the medical treatment. And you made these arguments in the lower tribunals. You made it before the arbitrator, correct? Right. Well, one thing that's important to note, though, is that the arbitrator's decision states that the petitioner had no prior problems with her lower extremities or her bilateral knees, which is inconsistent. So the decision of arbitration was inconsistent with the actual testimony. What about the commission decision? They were aware of it prior, weren't they? Well, in the commission decision, they don't really give any opinions. They just affirm. And the only thing that gave a written opinion was a dissent that also stated what I'm arguing today. Okay. And so based on these factors, I argue that this situation, because of the previous medical treatment, because of the accident, because of the inconsistent histories in the first medical treatment record that she appeared at after accident showed that she had no lower extremity problems. And then when she appeared with Dr. Roblin, and Dr. Roblin states that the venous insufficiency is not causing the right knee pain, I'm contending that this is beyond the knowledge of a layperson, and it would take an expert opinion to state if the right knee complaints and problems were related to the alleged work accident. Thank you. Thus, I'm arguing that the Circuit Court of Views' discretion when it found the commission's decision regarding accident causation was not against the manifest way of the evidence. We're reviewing the commission's decision. Yes, Your Honor. I'm sorry. The commission was against the manifest way. Thank you, Your Honor. Counsel, please. Your Honors, Counsel, my name is Eric Kirkpatrick, and I represent the petitioner. I did not represent the petitioner at the arbitration hearing. I have represented her since the appeal of the Industrial Commission, Workers' Compensation Commission. I have only three points for you, okay? The first point is everybody knows the manifest way of the evidence standard, and in this case, even though this decision may not be one that we would make or you would make or maybe the same arbitrator would have made on three or four different occasions, maybe this case would have been arbitrated ten times and lost seven of those times. The fact of the matter is the opposite result here is not clearly apparent, and therefore, based on the standard of review, this court cannot reverse it. The second point I would like to make is that, sure, it would have been nice. It would have been nice for me handling the case on appeal to know that I had a doctor's testimony connecting everything up and making a nice, pretty package. I probably wouldn't be here now. But the fact of the matter is that's not present. The Commission, as we know, ruled in the petitioner's favor, and it's not for this court to substitute its judgment in place of the Commission's. And lastly, a lot has been said not only on counsel's argument a moment ago but this morning previously about the expert opinions in these cases. There's no rule out there that an expert opinion is required. This court, I don't think, should now make a rule that an expert opinion is required. It would be inconsistent with case law, and it would be contrary to the purpose of the Act, which is this is a remedial Act set up for the benefit of injured workers. Some remarks have been made about this sort of thing, causation, is outside the realm of the knowledge of a layperson. That's not what we're dealing with. That's the standard in a civil case that's presented in front of a jury. The Commission is charged with being experts, so to speak, in rendering these decisions based on their experience. Long and short of it is this case is nothing more than a manifest way to the evidence standard. Sure, the case could be stronger if there were medical testimony, but the fact of the matter is the Commission ruled after reviewing all the evidence they affirmed the arbitrator, and the manifest way to the evidence is not good. That's all I have. Rebuttal. Rebuttal to the others. The appellant contends that while the general rule is that you don't always have to have an expert opinion in a workers' compensation case to find causation, there are instances when you do need one, and that is when you have prior medical treatment, you have inconsistent medical histories, when you have inconsistent testimony, when you have medical records that are contradicted by the petitioner's testimony at trial.  And to come to a conclusion because in this case the petitioner's long-standing degenerative knee condition is something that should have been, or a medical opinion should have been required based on the facts I just stated because of the inconsistent prior problems that she had. Is it unusual in your opinion to find that the totality of the medical records contain some inconsistencies with the claimant's testimony? I mean, is that unusual? It's not unusual if it... It would depend, I guess, on the facts themselves. No, it's not unusual. But when you have situations where the petitioner testifies at trial that she had swelling and pain immediately and the first visit she has no pain complaints and then doesn't make an accident history, no, that is a situation that I don't think is a usual medical history that causation would be found. Of course, we'll take the matter under his guidance for disposition.